UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Christopher Norris

    v.                                      Civil No. 18-cv-065-LM
                                              Opinion No. 2019 DNH 158

Atrium Medical Corporation,
Maquet Cardiovascular US
Sales, LLC, and Getinge AB


In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)


O R D E R

Christopher Norris brings suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims and breach of warranty claims. Norris's suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. The case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Defendants Atrium and Maquet move to dismiss on a variety of grounds.[1] Norris objects.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**BACKGROUND**

Norris lived in Texas during the events at issue in this case and still lives there. On February 25, 2010, Norris had a laparoscopic repair of a left inguinal hernia at Grace Medical Center in Lubbock, Texas. A piece of C-QUR Edge mesh was used for the repair. In January 2016, Norris had another procedure to repair a right inguinal hernia. During that procedure, his surgeon found that the left hernia site and the mesh were infected.

Atrium, which designed, marketed, and sold the C-QUR mesh that was implanted into Norris, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Norris alleges that Maquet and Getinge are responsible for defendants' actions and exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Norris alleges, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to be permanently implanted for those repairs, and defendants represented that C-QUR mesh was safe and effective for that purpose. He further alleges that C-QUR mesh was not safe or

effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. Norris alleges claims of negligence (Count I), strict liability – design defect (Count II), strict liability – manufacturing defect (Count III), strict liability – failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranties of merchantability and fitness of purpose (Count VI), and punitive damages (Count VII).

## DISCUSSION

Defendants Atrium and Maquet move to dismiss Norris's claims, contending that the breach of warranty claims are barred by the applicable statute of limitations, that Texas law governs the liability portion of all of the claims, and that none of the claims is cognizable under Texas law. Defendants also contend that the claim for punitive damages must be dismissed because it does not state a cause of action. Norris objects, arguing that a choice of law is premature, that his breach of warranty claims are not-time barred, and that his claims are sufficiently pleaded.

I. Statute of Limitations

The parties agree that New Hampshire's statutes of limitations, as procedural rules of the forum state, apply in this case. See TIG Ins. Co. v. EIFlow Ins. Ltd., No. 14-cv-459-JL, 2015 WL 5714686, at *3 (D.N.H. Sept. 29, 2015) (discussing circumstances under which it is appropriate for this court, sitting in diversity, to apply New Hampshire's statute of limitations). Norris alleges both breach of express warranty (Count V) and breach of implied warranties

(Count VI) claims. The parties agree that RSA 382-A:2-725 provides the applicable statute of limitations for the breach of warranty claims.

RSA 382-A:2-725(1) provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." RSA 382-A:2-725(2). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Id. The discovery rule for future performance does not apply to implied warranties. Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 853 (2005). Similarly, while equitable tolling and the fraudulent concealment rule may extend the limitation period for purposes of a claim of breach of an express warranty, they do not apply to breach of implied warranties claims. Begley v. Windsor Surry Co., Civ. No. 17-cv-317-LM, 2018 WL 1401796, at *8 (D.N.H. Mar. 19, 2018) (relying on Lockheed Martin Corp. v. RFI Supply, Inc. 440 F.3d 549, 556-57 (1st Cir. 2006)).

Defendants assert that Norris's breach of warranty claims accrued when the mesh product was implanted in February 2010, which is nearly eight years before he brought suit in January 2018. Norris contends that defendants' warranties extended to future performance of the mesh and, therefore, the accrual date is extended to when the breach of warranty was discovered or should have been discovered. He further contends that he could not have been aware of the defects in the mesh until after his second surgery in January 2016, which is less than four years before he brought suit. In their reply, defendants argue that the future performance extension does not apply because no such explicit warranty was made and that the future performance extension does not apply to breach of implied warranty claims.

4

As stated above, the discovery rule for future performance does not apply to breach of implied warranty claims. Nor does equitable tolling or fraudulent concealment. Therefore, Norris's claim for breach of implied warranties, Count VI, accrued on February 25, 2010, when the mesh was implanted. Because Norris brought this suit more than four years later, Count VI is dismissed as untimely.

The discovery rule for future performance does apply to Norris's breach of express warranty claim if defendants' express language warranted the performance of the mesh for a future period of time or permanently. Kelleher, 152 N.H. at 828. At this stage of the litigation, the court is limited to the allegations in the amended complaint and does not have defendants' actual advertising or marketing materials. Norris alleges that defendants warranted that the mesh product was safe and fit for its intended purpose, which was to be permanently implanted into patients. As such, the court may make the reasonable inference that in advertising, marketing, and otherwise promoting C-QUR mesh, defendants expressly warranted the future performance of the mesh product after implant. Therefore, Norris's allegations are sufficient to preclude dismissal of the breach of express warranty claim, Count V, as time-barred at this stage of the litigation. Defendants' statute-of-limitations defense to this claim is better raised in a properly supported motion for summary judgment.

II. Choice of Law

Defendants contend that Texas has an interest in the case because Norris's alleged injury occurred in Texas. They further argue that Texas law should govern liability for the claims in this case. Norris argues that a choice of law is premature at this stage of the litigation.

A. <u>Timeliness of Choice-of-Law Analysis</u>

Norris argues that it is premature for the court to engage in a choice-of-law analysis. He contends that a choice-of-law analysis is "heavily fact dependent" and that because his case involves seven claims which are "complex and require further discovery," a choice of law cannot be made now. Doc. no. 63-1 at 3, 4. Norris states that information about defendants' liability must be obtained through discovery.

In support of his position, Norris relies on Knightly v. Gula, No. 16-cv-124-AJ, 2016 WL 4401996 (D.N.H. Aug. 18, 2016) and Rivera v. Body Armor Outlet, LLC, No. 17-cv-512-LM, 2018 WL 1732154 (D.N.H. Apr. 10, 2018). In <u>Knightly</u>, the magistrate judge explained that she could not make a determination on one factor of the choice-of-law standard because the complaint was only five pages long and she lacked sufficient information about which state had the most substantial connection to the case. 2016 WL 4401996, at *1 (internal quotation marks and citation omitted). In <u>Rivera</u>, the court explained that the evidence pertaining to whether the plaintiff agreed to a choice-of-law provision was "sparse and, more importantly unclear," which was the main reason the choice-of-law issue was premature. 2018 WL 1732154, at *1.

Unlike the parties in those cases, Norris does not explain what specific information is lacking that is necessary for the choice-of-law analysis that can be obtained only through discovery. His complaint is forty-one pages long, and the locations of where defendants manufactured the allegedly defective products and where Norris had his surgeries are not in dispute. As a result, Norris has not shown that the choice-of-law issue in this case is premature at this stage.

B. Choice-of-Law Standard

New Hampshire choice-of-law principles govern the choice of law in this bellwether case. See, e.g., Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must apply the choice-of-law framework of the forum state"). "Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000). An actual conflict exists only when application of the laws of an interested state other than the forum would change the outcome. Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993). When no actual conflict is shown, the court will apply the law of the forum state which, in this case, is New Hampshire. Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010). The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law. SIG Arms, 122 F. Supp. 2d at 259.

C. Actual Conflict

The parties agree that New Hampshire and Texas are interested states in this case. Defendants contend that there is an actual conflict between the laws of New Hampshire and Texas with respect to Norris's design defect and breach of warranty claims. Although they show that certain differences exist between New Hampshire and Texas law as to those claims in these circumstances, they fail to show that Norris could not allege facts that would satisfy the standards imposed by Texas law. Because defendants have not carried their burden as to these

7

claims, the court will apply New Hampshire law to the liability portion of the claims. See
Aftokinito, 2010 WL 3168295, at *3.

Defendants only identify a purported conflict between New Hampshire and Texas law for
Norris's design defect claim and breach of warranty claims. Under the doctrine of dépeçage,
"different substantive issues in a tort case may be resolved under the law of different states
where the choices influencing decisions differ." Lacaillade, 2011 WL 4738654, at *1. Here, the
legal standards for Norris's claims require different elements of proof. Therefore, dépeçage
requires the court to consider the choice-of-law question separately for each claim. Because
defendants do not address or identify an actual conflict with respect to New Hampshire and
Texas law as to Norris's other claims, New Hampshire law also applies to the liability portion of
those claims.[2] See Aftokinito, 2010 WL 3168295, at *3.

III. Merits of the Claims

Defendants move to dismiss Norris's claims under Texas law. Because New Hampshire
law governs the claims, defendants have not shown that Norris fails to state a claim.

Defendants also challenge Norris's claim for punitive damages in Count VII. A claim for
punitive damages does not set out a "claim for relief" within the meaning of Federal Rule of
Civil Procedure 8(a)(2). Instead, it is a request for a remedy and should not be labeled as a
separate "count." D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., No. 17-cv-747-LM,

---

[2] Other than his argument that a choice of law is premature, Norris offered no choice-of-law analysis in his objection to defendants' motion to dismiss. Defendants contend in their reply that Norris therefore waived any objection to the application of Texas law, and, for that reason, Texas law governs. However, it is defendants' burden to show the content of the foreign law and that an actual conflict exists. SIG Arms, 122 F. Supp. 2d at 259. As discussed above, defendants have not satisfied that burden. Therefore, in the context of this case, Norris's failure to address the choice-of-law issue is not dispositive.

2018 WL 6519070, at *6 (D.N.H. Dec. 11, 2018). Although Norris's request for punitive damages is not a separate count, the request remains in the case at this stage of the proceedings. Id. (citing cases).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 59) is granted as to Count VI and is otherwise denied.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

September 19, 2019

cc: Counsel of Record